NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO S.M.

No. 1 CA-JV 25-0056

FILED 11-14-2025

---

Appeal from the Superior Court in Maricopa County
No. JD41336
The Honorable Michael Rassas, Judge

**AFFIRMED**

---

COUNSEL

Che'Neal W., Buckeye
*Appellant Pro Se*

Law Office of Ed Johnson, PLLC, Phoenix
By Edward D. Johnson
*Advisory Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Veronica F. Rios
*Counsel for Appellee DCS*

Roland Arroyo Attorney at Law, Waddell
By Roland Arroyo
*Co-Counsel for Appellee Child*

Pamela Saint Attorney at Law, Phoenix
By Pamela G. Saint
*Co-Counsel for Appellee Child*

---

**MEMORANDUM DECISION**

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Veronika Fabian joined.

---

**F O S T E R**, Judge:

¶1 Che'Neal W. ("Mother") challenges the juvenile court's termination of parental rights as to S.M. For the following reasons, this Court affirms.

## FACTS AND PROCEDURAL HISTORY

¶2 This Court views the facts "in a light most favorable to sustaining the juvenile court's findings." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2, ¶ 2 (2016).

¶3 Mother is the parent of S.M., born in May 2020. In September 2021, Mother was unemployed and living with Marlo B. ("Boyfriend"), who stabbed her thirteen times in front of S.M. After the stabbing, Mother fled Boyfriend's apartment to a hospital and a neighbor found S.M. crying at the scene. Based on these events, the Department of Child Safety ("Department") took emergency custody of S.M. and placed him with his maternal grandmother. After identifying safety concerns with the maternal grandparents, the Department moved S.M. to an out-of-home placement.

¶4 The Department filed a dependency petition based on neglect in October 2021 alleging S.M. was dependent due to Mother's mental health issues, domestic violence and unstable housing. The court held a dependency hearing on the petition where all parties, except for Mother, appeared. In April 2022, the court found S.M. dependent as to Mother, granted custody of S.M. to the Department and adopted a reunification plan.

¶5 As part of the reunification plan, the Department referred Mother to several services. The services included individual counseling, domestic violence counseling and supervised visitation, among other services. Mother also moved to a domestic violence shelter. Not long after, Mother's counseling services terminated their involvement due to Mother's lack of participation, and the shelter expelled her.

**¶6**        Mother continued to have issues with stable housing. Between February 2022 and July 2024, Mother moved six times between Indiana and Georgia. During that time, Mother was at times unhoused, unemployed or both. But even while away from Arizona, the Department offered Mother services. The Department informed Mother that as part of the reunification plan, she needed to substantially engage in trauma therapy, go to therapy with S.M. to address their relational post-traumatic stress disorder and attend in-person visitation with S.M. to build their relationship. Though Mother reported attending therapy sessions, she did not engage in the sessions to a significant degree.

**¶7**        The Department retained custody of S.M. for two years. Mother made no significant improvements to reunite with S.M. during this time and the Department moved to terminate her parental rights in August 2024. The court held a hearing on the termination in September. Mother appeared virtually and waived any defects to service.

**¶8**        On March 6, 2025, the court held a status conference at which Mother appeared. Mother moved to continue the termination hearing and have new counsel appointed. The court granted Mother's motion and "advised [Mother] of the consequences of her failure to . . . appear for future hearings[.]" The court continued the status conference until March 11, 2025. On March 11, all parties were present (including Mother's newly appointed counsel) except Mother. Accordingly, the court converted the hearing to an accelerated termination hearing and proceeded without her. After hearing testimony from the case manager for Mother and S.M., the court terminated Mother's parental rights on the grounds of neglect and fifteen-months' out-of-home placement.

**¶9**        Mother timely appealed and this Court has jurisdiction pursuant to A.R.S. §§ 8-235(A) and 12-120.21(A)(1).

## DISCUSSION

**¶10**        As a preliminary matter, the Department argues Mother has waived any error by failing to develop any meaningful argument supported by record citations. An opening brief must contain an argument "with supporting reasons" and relevant citations to the record and law. Ariz. R. Civ. App. P. 13(a)(7)(A). If an appellant's opening brief presents issues "not supported by adequate explanation, citations to the record, or authority," those issues may be considered waived. *Ramos v. Nichols*, 252 Ariz. 519, 522, ¶ 8 (App. 2022) (quotation omitted). Self-represented litigants are not afforded leniency to this standard. *Id.* (citation omitted).

But in cases involving a child's best interests, the child's interests are paramount and this Court will not exercise its discretion to strictly enforce Arizona Rule of Civil Appellate Procedure 13. *See Nold v. Nold*, 232 Ariz. 270, 273, ¶ 10 (App. 2013) ("[I]f the best interests of the child trump the consequences ordinarily imposed for violations of the rules, then they should not be ignored under the discretionary doctrine of waiver."). This Court, in its discretion, considers Mother's arguments, although imperfectly presented.

## I.     Mother received notice of the termination hearing.

¶11     Mother argues the court erred in terminating her parental rights by: (1) proceeding without proper notice; (2) relying on an incomplete and biased record; (3) discounting her progress toward reunification; (4) having ineffective assistance of counsel; and (5) failing to address the true paternity of S.M., which resulted in violations of statutory kinship placement preferences. Parents enjoy "a fundamental liberty interest in the care" and custody of their children and are entitled to fundamental due process when the State seeks to terminate those rights. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005).  But that right is not absolute. *Id.*

¶12     If a parent does not appear at the initial termination hearing and lacks good cause, the court may address termination in the parent's absence. A.R.S. § 8-863(C); Ariz. R.P. Juv. Ct. 352(f)(1). Before doing so, a court must first determine whether: the parent has notice of the initial termination hearing; notice was received or waived; and the parent received an advisement of the consequences of failing to appear. A.R.S. § 8-863(C); Ariz. R.P. Juv. Ct. 352(f)(1)(A) — (C).

¶13     Here, Mother received proper notice. The termination petition and notice of the initial hearing were served on Mother's counsel. That notice provided:

> You have a right to appear as a party in this proceeding. You are advised that your failure to personally appear in court at the initial hearing, pretrial conference, status conference, or termination adjudication, without good cause shown, may result in a finding that you have waived your legal rights and have admitted the allegations in the Motion. In addition, if you fail to appear without good cause, the hearing may go forward in your absence and may result in termination of

4

your parental rights based upon the record and the evidence presented to the Court.

Mother then appeared at the initial termination hearing on September 16, 2024. At that hearing, Mother waived any defects regarding service. Mother also appeared at the March 6 status conference. On the record at that proceeding, the court "advised [Mother] of the consequences of her failure to participate in services and/or to appear for future hearings[.]" The court reset the status conference for March 11 and provided Mother notice of the hearing in open court.

**¶14** Though Mother's counsel was present at the March 11 status conference, Mother did not appear and the Department moved to proceed in her absence. The court noted on the record that "the [c]ourt did advise Mother and remind[ed] Mother at that status conference that if she fails to appear without good cause, the [c]ourt can find she waives her right to contest the allegations in the Department's motion and proceed in her absence." Based on this record, Mother received notice.

## II. Sufficient evidence supports termination of Mother's rights.

**¶15** Mother asserts several other arguments to suggest that the court erred in terminating her rights. Though Mother failed to raise these concerns with the court, this Court addresses the grounds of termination because it involves the child's best interests. *Nold,* 232 Ariz. at 273, ¶ 10.

**¶16** This Court "accept[s] the juvenile court's findings of fact if reasonable evidence and inferences support them, and will affirm a [termination] order unless it is clearly erroneous." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018). A court may terminate a parent's rights if it finds (1) sufficient grounds for termination under A.R.S. § 8-533(B) by clear and convincing evidence and (2) the termination would be in the best interests of the child by a preponderance of the evidence. *Id.* at 149—50, ¶ 8; A.R.S. § 8-533(B).

### a. Termination on grounds of neglect

**¶17** Here, clear and convincing evidence supports the court's findings of neglect. Neglect is defined in relevant part as "[t]he inability . . . of a parent . . . to provide [a] child with supervision, food, clothing, shelter or medical care if that inability . . . causes substantial risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a). The record shows that for a period of two years during which S.M. was in the Department's custody, Mother did not maintain consistent housing, employment or attend therapy

mandated by the reunification plan. Even though Mother was out of state during most of this period, the Department provided referrals for services to support reunification both in Arizona and out of state. Mother did not provide for S.M. at all during this period. The record supports the juvenile court's findings.

### b. Termination of parental rights is in S.M.'s best interests

**¶18**　　　The record also supports the court's findings that termination was in S.M.'s best interests. The court found S.M.'s "adoptive placement . . . is meeting all his daily physical, emotional, medical and educational needs." The court also found furthering the plan of adoption "would provide [S.M.] with permanency and stability." Furthermore, the court found "[c]ontinuation of the parent-child relationship would be a detriment to [S.M.] because Mother has untreated mental illness." The court noted that for almost three years, Mother has not been able to demonstrate progress for her mental health and rather reported being "unable to provide for many of her own necessities such as stable housing." These findings by the court justify its conclusion that continuing the parent-child relationship was not in S.M.'s best interests. Because this Court affirms the court's finding of neglect it need not address the court's alternative findings on out-of-home placement grounds under § 8-533(B)(8)(c). *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, [this Court] need not address claims pertaining to the other grounds.").

### III. Mother waived any remaining arguments.

**¶19**　　　Mother contends the court failed to consider her progress and active participation in reunification services; violated statutory kinship placement preferences; failed to ensure reasonable efforts toward reunification and that the Department presented an incomplete and biased record. She also argues her initial attorney failed to advocate effectively, which compromised her ability to present her case. Mother provides no citations to the record or legal citations to support these claims. If an appellant's opening brief presents issues "not supported by adequate explanation, citations to the record, or authority," those issues may be considered waived. *Ramos,* 252 Ariz. at 522, ¶ 8 (quotation omitted). Mother has waived these remaining issues.

**CONCLUSION**

¶20          This Court affirms.

